**Salvador CABAN, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 521, Docket 81–6133.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1981.

Decided Feb. 5, 1982.

Melvin L. Wulf, New York City (Clark, Wulf & Levine, Leon Rosen, New York City, of counsel), for plaintiff-appellant.

\* Honorable William C. Conner, United States District Judge for the Southern District of New York, sitting by designation.

1. 8 U.S.C. § 1225 provides in pertinent part that:

    (a) ... All aliens arriving at ports of the United States shall be examined by one or more immigration officers at the discretion of the Attorney General and under such regulations as he may prescribe. Immigration offi-

Steven E. Obus, Asst. U. S. Atty., S. D. N. Y., New York City (John S. Martin, Jr., U. S. Atty., S. D. N. Y., Michael H. Dolinger, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and CONNER,\* District Judge.

FEINBERG, Chief Judge:

Salvador Caban appeals from a grant of summary judgment by the United States District Court for the Southern District of New York, Lee P. Gagliardi, J., dismissing his complaint under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 et seq., for damages resulting from his arbitrary detention by agents of the Immigration and Naturalization Service (INS). This appeal requires us to consider both the scope of the discretionary function exception to the FTCA, § 2680(a), and also how that exception is affected by the 1974 amendment to the Act, § 2680(h), which waives the immunity of the United States to suits arising out of certain intentional torts committed by its investigative and law enforcement officers.

I.

On the record in the district court, the facts are as follows. On January 5, 1978, appellant, who apparently is a native of Puerto Rico, disembarked at John F. Kennedy International Airport from a flight that originated in Santo Domingo, Dominican Republic. Pursuant to 8 U.S.C. § 1225[1] and regulations adopted thereunder,[2] an agent of the INS stopped appellant for a routine examination to determine his admissibility into the United States. When this preliminary investigation failed to persuade the INS agent that Caban was entitled to entry, appellant was referred to a

cers are authorized and empowered to board and search any vessel, aircraft, railway car, or other conveyance, or vehicle in which they believe aliens are being brought into the United States. The Attorney General and any immigration officer, including special inquiry officers, shall have power to ... consider evidence of or from any person touching the privilege of any alien or person

2. See note 2 on page 1231.

secondary inspection, where further evidence of citizenship was demanded. Unable to produce a passport, Caban offered the officer a birth certificate indicating that he was born on September 19, 1941 in Las Marias, Puerto Rico. He had in his possession a New York State driver's license, a social security card, a union membership card and a letter from the State Department asking for additional evidence relevant to his passport application. The officer, in turn, asked appellant various questions designed to establish his citizenship. Appellant's answers to these questions made his claim highly doubtful: he gave inconsistent answers to questions about when he came to New York initially; he could not answer simple questions about Puerto Rico such as the colors of its flag and the names of its hotels and his local hospital. Caban was therefore referred to another INS agent, who questioned Caban further and then received permission from the supervisor in charge to detain Caban. Appellant was then brought to the INS detention center in Brooklyn, New York, where he remained until he was released. Alberto Riefkohl, an INS trial attorney who

he believes or suspects to be an alien to enter, reenter, pass through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service....

(b) Every alien ... who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer. The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien, whose privilege to land is so challenged, before a special inquiry officer for further inquiry.

(c) Any alien ... who may appear to the examining immigration officer or to the special inquiry officer during the examination before either of such officers to be excludable ... shall be temporarily excluded, and no further inquiry by a special inquiry officer shall be conducted until after the case is reported to the Attorney General together with any such written statement and accompanying information, if any, as the alien or his representative may desire to submit in connection therewith and such an inquiry or further inquiry is directed by the Attorney General. If the Attorney General is satisfied that the alien is excludable under any of such paragraphs on the basis of information of a confidential nature, the disclosure of which the Attorney General, in the exercise of his discretion, and after consultation with the appropriate security agencies of the Government, concludes would be prejudicial to the public interest, safety, or security, he may in his discretion order such alien to be excluded and deported without any inquiry or further inquiry by a special inquiry officer....

2. 8 C.F.R. § 235.1 (1980) provides in pertinent part that:

(a) *General.* Application to enter the United States shall be made in person to an immigration officer at a U. S. port of entry enumerated in Part 100 of this chapter at a time when the immigration office at the port is open for inspection.

(b) *U. S. citizens.* A person claiming U. S. citizenship must establish that fact to the examining immigration officer's satisfaction and must present a U. S. passport if such passport is required under the provisions of 22 CFR Part 53. If such an applicant for admission fails to satisfy the examining immigration officer that he is a U. S. citizen, he shall thereafter be inspected as an alien.

\*    \*    \*    \*    \*    \*

(d) *Qualifications for aliens.* The following general qualifications and requirements shall be met by an alien seeking to enter the United States....: He shall present whatever documents are required and shall establish to the satisfaction of the immigration officer that he is not subject to exclusion under the immigration laws, Executive orders, or Presidential Proclamations and is entitled under all of the applicable provisions of the immigration laws and this chapter to enter the United States.

8 C.F.R. § 235.3 (1980) provides in part that:

(a) *Prior to inspection.* All persons arriving at a port in the United States by vessel or aircraft shall be detained aboard the vessel or at the airport of arrival by the master, commanding officer, purser, person in charge, agent, owner, or consignee of such vessel or aircraft until admitted or otherwise permitted to land by an officer of the Service. Notice or order to so detain shall not be required.

(b) *Detention after inspection.* If in the opinion of the examining immigration officer it is not practical to resolve a question of admissibility at the time of arrival of a passenger on a vessel or aircraft, the officer shall execute Form I-259 to notify the agent for the vessel or aircraft and the master or commanding officer, if available, that the passenger is to be presented for further inspection.

is also a native of Puerto Rico, subsequently interviewed Caban. Although Caban was equally unable to satisfy Riefkohl that his claim to citizenship was legitimate, he was released on a $1,000 appearance bond on January 11, 1978, six days after he was detained.

In October 1978, Caban filed an administrative claim under the FTCA for $1,000,-000 for negligence, invasion of privacy and false imprisonment. When that claim was denied by the INS, Caban commenced this action in May 1979 seeking the same amount of damages. The government moved for summary judgment on the ground that Caban's FTCA action is barred by § 2680(a) of the Act, which provides that:

> The provisions of this chapter and section 1346(b) [3] of this title shall not apply to—
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. (Footnote inserted).

Caban appeals from an order of the district court dated June 8, 1981, granting the government's motion. Because we do not feel that the actions of the INS agents were discretionary in the sense contemplated by the Act, we reverse and remand the case for further proceedings.

## II.

The discretionary function exception to the FTCA has presented the courts with problems almost from the time of its enactment in 1946. The principal difficulty is simply that all federal employees exercise a certain amount of discretion in the discharge of their responsibilities. In short, no federal employee is a robot. But if discretion means what Webster's says it means— the "power of free decision or latitude of choice within certain legal bounds," Webster's Seventh New Collegiate Dictionary 238 (7th ed. 1965)—then this exception swallows the general rule that waives the United States' immunity to suits arising out of its employees' actions. Over the years, the courts have drawn this elusive line between protected and unprotected activities with varying degrees of success. See, e.g., the discussion in *Hendry v. United States,* 418 F.2d 774, 780–82 (2d Cir. 1969). Nonetheless, commentators have classified the analyses developed into three types: the "planning-operational" test, derived from *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); the "good Samaritan" test, exemplified by *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227 (2d Cir.), *cert. denied sub nom. United States v. Ingham,* 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967), and a test based upon whether the action involved the balancing of policy factors ("policy balancing" test), which is currently in the ascendancy, see, e.g., *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1086–87 (D.C.Cir. 1980); *Sami v. United States,* 617 F.2d 755, 765–68 (D.C.Cir.1979); *Blessing v. United States,* 447 F.Supp. 1160 (E.D.Pa. 1978); Comment, Scope of the Discretionary Function Exception Under the Federal Tort Claims Act, 67 Geo.L.J. 879 (1979), and cases cited at 891 n.107; Note, The Discre-

---

**3.** Section 1346(b) provides that:

> (b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945,

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

tionary-Function Exception to the Federal Tort Claims Act, 42 Alb.L.Rev. 721 (1978).

We agree with the current thinking that the policy balancing test best fulfills the purpose for which the discretionary function exception was designed. By barring tort liability for activities that require the alleged tortfeasor to consider and weigh competing policies in arriving at his decision, this test protects courts from "involve[ment] in making ... decision[s] entrusted to other branches of the government," *Canadian Transport*, 663 F.2d at 1087, and especially from questions involving "not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency," *Blessing*, 447 F.Supp. at 1170. The exception thus protects the principles embodied in the separation of powers doctrine by keeping the judiciary from deciding questions consigned to the executive and legislative branches of the government. This core function was recognized in our decision in *Hendry v. United States*, supra. There we viewed *Dalehite* as excepting public policy type decisions, 418 F.2d at 783, and stated that "[i]t is clear that § 2680(a) was intended to protect the validity of governmental regulations from challenge in a tort action for damages ...." Id. at 782. Similarly, we found that the discretionary function exception does not allow attacks on "those governmental decisions in which, to be effective, the decision-maker must look to considerations of public policy and not merely to ... standards of general reasonableness." Id. at 783.

Applying this test to the situation before us, we find that the activities of the INS agents who detained appellant do not fall within the purview of § 2680(a) because the activities are not the kind that involve weighing important policy choices. While it is true that the pertinent statutes and regulations vest immigration officials with broad discretion by defining an applicant's entry rights in terms of how he "appear[s]" to the immigration officer, § 1225(b), and whether the INS agent is "satisf[ied]" with

his proof of entitlement to enter, 8 C.F.R. § 235.1 (1980), that language goes only to the standard of care by which the INS employees' behavior is judged. The quoted language does not convert the discharge of prescribed responsibilities into "decisions which involve a choice between competing policy considerations ...." *Canadian Transport*, 663 F.2d at 1087. In contrast, the promulgation of regulation 8 C.F.R. § 235.1 is a discretionary act entitled to immunity under § 2680(a) because setting down that rule involves balancing the government's interest in protecting its citizens' welfare against the applicant's interest in a fair and just determination of his rights. Thus, if Caban were suing the INS for adopting this regulation, he would find his case properly dismissed under § 2680(a) even if he could show that the regulation resulted directly in his detention in Brooklyn for six days.

Moreover, contrary to the government's contention, our construction of § 2680(a) is not inconsistent with prior decisions of this court. It is true that in *Hendry*, supra, relied upon by the district judge, there is language that suggests that ad hoc determinations are protected by the discretionary function exception. Nonetheless, the holding in that case was that § 2680(a) did not bar an FTCA suit based on the loss of a merchant marine license as a result of a negligent psychiatric examination. We think that determining whether a merchant mariner is mentally fit involves no less discretion than determining whether an applicant is an American citizen, an objectively verifiable fact. If the former judgment does not involve the kind of discretion protected by the FTCA, then neither does the latter. Similarly, the decision to detain someone at the border is not fraught with the need to balance competing policy considerations that obtains when the Comptroller of the Currency decides whether or not to appoint a receiver for a national bank, see *Huntington Towers, Ltd. v. Franklin Nat'l Bank*, 559 F.2d 863, 870 (2d Cir. 1977), cert. denied sub nom. *Huntington Towers,*

*Ltd. v. Federal Reserve Bank*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978).

The 1974 amendment to the FTCA, § 2680(h), strengthens our belief that the activities at issue here are not protected by the discretionary function exception. Section 2680(h) provides that:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this sub-

section, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

By its terms, this section waives the government's immunity to liability arising out of certain intentional torts committed by investigative and law enforcement officers such as the INS agents.[4] We believe that the government is correct in asserting that this subsection must be read in conjunction with the discretionary function exception. We do not think, however, that either section should be read to eviscerate the other. Cf. *Sami v. United States*, 617 F.2d at 768. If we classify as discretionary the basically mechanical duty to ascertain whether an applicant meets the minimal standards for entry into this country, we will jeopardize a primary purpose for enacting § 2680(h). This section was triggered by the abusive tactics of federal narcotics agents who engaged in illegal, unconstitutional "no-knock" raids. The measure was

4. The INS agents fall within the reach of § 2680(h) by virtue of the powers given them by 8 U.S.C. §§ 1225(a) and 1357.

Section 1225(a) gives INS agents the power to search conveyances in which aliens are believed to be smuggled into the country, see note 1, supra.

Section 1357 provides in pertinent part that:

(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

\* \* \* \* \* \*

(2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, or expulsion of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest. . . .

(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or ve-

hicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States; and

(4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, or expulsion of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest. . . .

\* \* \* \* \* \*

(c) Any officer or employee of the Service authorized and designated under regulations prescribed by the Attorney General, whether individually or as one of a class, shall have power to conduct a search, without warrant, of the person, and of the personal effects in the possession of any person seeking admission to the United States, concerning whom such officer or employee may have reasonable cause to suspect that grounds exist for exclusion from the United States under this chapter which would be disclosed by such search.

designed to "provid[e] a remedy against the Federal Government for innocent victims of Federal law enforcement abuses." S.Rep.No. 93–588, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 2789, 2792. Compared to the decision of the INS agents here, the decision of a narcotics agent as to whether there is probable cause to search, seize, or arrest raises many more competing considerations. Since the amendment to the statute clearly allows the government to be sued for narcotics agents' abuses, Caban's seems an a fortiori case for allowing suit.

We hasten to add that this interpretation in no way equates the standard for judging the legality of an arrest with the standard for evaluating the legality of a border exclusion. It has long been the law that people have significantly less rights at a border than they have in the interior, cf., e.g., *Carroll v. United States*, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925); *Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). Conversely, law enforcement officers need far less reason to detain an applicant for entry than they need to make an arrest within the country. The issue of what standard applies to a border detention is thus a difficult one, but was not addressed below, and we will therefore not do so here. It may very well be that because of the broad power given the immigration authorities, on these facts it will be very difficult for appellant to prove that a tort was committed. We are concerned here only with whether the district court erred by, in effect, finding that it lacked subject matter jurisdiction to hear this case because the action fell within the discretionary function exception to the Act.[5] All we decide now is that Caban's cause of action falls within the general waiver of the United States' sovereign immunity.

The judgment of the district court is reversed and the case is remanded for further proceedings.

---

5. Because the FTCA is structured as a grant of subject matter jurisdiction to the federal courts, see 28 U.S.C. § 1346(b), note 3, supra, a finding that the discretionary function exception applies is tantamount to holding that the court lacks jurisdiction, see *Hendry*, 418 F.2d at 783; *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1254 (2d Cir. 1975).