Ronnie **BRADLEY**

v.

The **UNITED STATES of America.**

Civ. A. No. 85–0034.

United States District Court,
E.D. Pennsylvania.

July 10, 1985.

Edward L. McCandless, Jr., Philadelphia, Pa., for plaintiff.

Serena H. Dobson, Asst. U.S. Atty., Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this action plaintiff alleges negligent and/or tortious conduct on the part of United States' employees. The facts, viewed in the light most favorable to plaintiff, are as follows. Alarmed by the sale of illegal drugs in the Coatesville Veterans Administration Hospital, James L.G. Parsons, II, director of the hospital, and Peter J. Mango, chief of the hospital's police force, decided to conduct an undercover investigation. Curtis Kimmel, a V.A. police officer, was assigned to the undercover investigation and John Cantrell, a hospital clothing clerk, was utilized as an informant. As is the case with some informants, Cantrell's reputation was not as a vestal virgin it being alleged that he was known to be both mentally deficient and a drug user.

Shortly after commencement of Cantrell's undercover activities, and based upon information supplied by Cantrell, Officer Kimmel caused a criminal complaint to be filed against plaintiff. This complaint charged plaintiff with "possession, possession with intent to deliver and delivery of a controlled substance, to wit: marijuana." Because of weaknesses in the government's evidence, this criminal action was *nolle prossed* by the Chester County District Attorney's Office. However, the allegation that plaintiff was a drug dealer did result in plaintiff's dismissal from employment at the V.A. hospital.

Based on the foregoing, plaintiff caused a *Bivens* type action to be filed against Curtis Kimmel, John Cantrell, and James Parsons. Approximately two weeks prior to the scheduled trial date for the *Bivens*

action, plaintiff filed this complaint asserting a cause of action directly against the United States pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b). Presently before me is the government's motion to dismiss the FTCA action. In this motion, the government asserts the conduct complained of is within the "discretionary function" exception to the waiver of sovereign immunity contained in the FTCA. For the reasons that follow, the government's motion will be granted.

The "discretionary function" exception [1] to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), has resulted in much litigation with judicial precedent difficult to harmonize. *See Bernitsky v. United States*, 620 F.2d 948, 951 (3d Cir.1980). On the one hand, cases recognize that statutes waiving a sovereign's immunity from suit "are to be strictly construed in favor of the sovereign" *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). On the other hand, blind application of the "discretionary function" language would completely abrogate the waiver of immunity contained in 28 U.S.C. § 1346(b) because virtually all governmental actions require some decision making and, therefore, the exercise of some discretion. *See Smith v. United States*, 375 F.2d 243, 246 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967) ("If the Tort Claims Act is to have the corpuscular vitality to cover anything more than automobile accidents in which government officials are driving, the federal courts must reject an absolutist interpretation...."). *See also Downs v. United States*, 522 F.2d 990, 995 (6th Cir. 1975), *Liuzzo v. United States*, 508 F.Supp. 923, 931 (E.D.Mich.1981). This conflict, together with Supreme Court decisions Chief Justice Burger has characterized as "not follow[ing] a straight line," *United States v. S.A. Empresa de Viacao Aerea Rio*

---

1. As an initial matter plaintiff has argued that because he has alleged malicious prosecution and false arrest on the part of an "investigative officer," section 2680(h) applies to the exclusion of the discretionary function exception of section 2680(a). However, for the reasons expressed by the United States Court of Appeals

for the District of Columbia, I refuse to adopt such a construction of the statute. *See Gray v. Bell*, 712 F.2d 490, 507–08 (D.C.Cir.1983). *See also, Caban v. United States*, 671 F.2d 1230, 1234 (2d Cir.1982) ("We do not think, however, that either section should be read to eviscerate the other.").

*Grandense (Varig Airlines),* — U.S. ——, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984), has resulted in judicial precedent that does not "comprise a particularly coherent body of case law." *Blessing v. United States,* 447 F.Supp. 1160, 1172–73 (E.D.Pa.1978) (comparing various cases).

One of the earliest, and easily the most famous case on the subject is *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In *Dalehite* the Supreme Court characterized discretionary functions as those functions in which there was "room for policy judgment and decision." *Id.* at 36, 73 S.Ct. 968. Continuing, the Court found the challenged conduct could not "subject the Government to liability [because] the decisions ... were all responsibly made at a planning rather than operational level." *Id.* at 42, 73 S.Ct. 971.

From this Supreme Court language was born what is termed the planning level/operational level test for use in determining the contours of the discretionary function exception. *See Lindgren v. United States,* 665 F.2d 978, 980 (9th Cir.1982); *Bryson v. United States,* 463 F.Supp. 908, 911 (E.D. Pa.1978). Under this test all decisions concerning the "feasibility or practicability of governmental programs" or "considerations of public policy, calling for a balance of such factors as cost of Government programs against the potential benefit" were held to be "planning level" decisions and protected by the discretionary function exception. *See Griffin v. United States,* 500 F.2d 1059, 1064 (3d Cir.1974). Conversely, decisions which merely addressed how best to implement planning level decisions were defined as "operational decisions" not sheltered by the discretionary function exception.

From the beginning the planning level/operational level test proved troublesome. As stated by Judge Becker, in one of the most comprehensive opinions on the subject, the "planning/operational distinction, instructive as it may be on a theoretical level, can become exceedingly problematic when applied to concrete facts." *Blessing v. United States,* 447 F.Supp. 1160, 1173 (E.D.Pa.1978). Nonetheless, and apparently because this test does provide for many cases an accurate and easily applied standard, use of this test can still be found in reported decisions. *See Payne v. United States,* 730 F.2d 1434 (11th Cir. 1984); *Grunnet v. United States,* 730 F.2d 573 (9th Cir.1984); *Jablonski v. United States,* 712 F.2d 391 (9th Cir.1983); *Morris v. United States,* 585 F.Supp. 1543 (D.Mo. 1984). Its continued use, however, is of questionable propriety in that the most recent Supreme Court pronouncement on the discretionary function exception fails to even mention the test. *See Varig Airlines,* —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660. Similarly, recent Third Circuit decisions on the discretionary function exception have not utilized the planning/operational distinction. *See General Public Utilities Corp. v. United States,* 745 F.2d 239 (3d Cir.1984).[2]

In place of the planning/operational distinction, the Supreme Court in *Varig Airlines,* and the Third Circuit in its recent decisions utilize the reasoning employed by the Sixth Circuit in *Downs v. United States,* 522 F.2d 990 (6th Cir.1975). In *Downs,* the plaintiffs alleged FBI agents were negligent in the handling of an airplane hijack incident. As a result of this negligence, the hijackers murdered plaintiffs' decedents. After reviewing the relevant case law and legislative history, the

**2.** Even prior to *Varig Airlines,* the Third Circuit characterized the planning level-operational level distinction as an ineffective "semantic attempt to decide in which category [a] case falls." *Bernitsky v. United States,* 620 F.2d 948, 951 (3d Cir.1980). However, if there did exist a question as to the appropriateness of the test in the Third Circuit, it has now been definitively laid to rest by *Varig Airlines* and *General Public Utilities. See Johnston v. United States,* 597

F.Supp. 374, 434 (D.Kan.1984). ("The Supreme Court rejected the planning level/operational level line of cases adopted by various courts"); *Rulli v. United States,* 581 F.Supp. 1502, (W.D. Pa.1984) (quoting *Griffin v. United States,* 500 F.2d 1059, 1064 (3d Cir.1974) ("In the Third Circuit the 'litmus test' is not merely whether judgment was exercised but also whether the nature of the judgment called for policy considerations").

Sixth Circuit rejected the planning level-operational level test. In so doing the *Downs* court noted that the basis undergirding the test, "the status of the official making a judgment," was "not a sufficient test for determining whether a government employee's actions are within the exception." *Downs,* 522 F.2d at 997. Rather, "the basic question concerning the exception is whether the judgments of a Government employee are of 'the nature and quality' which Congress intended to put beyond judicial review. *Id.* (quoting *Smith v. United States,* 375 F.2d 243, 246 (5th Cir.), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967).

In this case, plaintiff has challenged four areas of conduct. First, he alleges government employees were negligent in using Cantrell as an informant because of his questionable mental capacity and moral character. Secondly, plaintiff alleges negligence in the supervision of Cantrell. More specifically, plaintiff alleges Curtis Kimmel failed to follow accepted procedures for the use of undercover drug informants. Third, plaintiff alleges Officer Kimmel acted in bad faith in causing criminal charges to be filed. And finally, plaintiff alleges his arrest, coupled with Kimmel's bad faith in bringing criminal charges, constitutes the tort of false arrest. Reduced to their core, plaintiff's allegations challenge the methods used by federal employees in investigating criminal offenses and their reliance on these procedures in causing criminal charges to be filed.

The decision to prosecute a given individual is the quintessential example of discretionary conduct. *See Accardi v. United States,* 435 F.2d 1239 (3d Cir.1970); *United States v. Arnold,* 403 F.Supp. 172 (E.D.Pa. 1975). That prosecutors possess wide latitude in this regard has never been questioned and the reasons supportive of its existence have often been used to analyze the availability of the discretionary function exception in similar FTCA situations. *See Bernitsky v. United States,* 620 F.2d 948 (3d Cir.1980); *Blessing v. United States,* 447 F.Supp. 1160 (E.D.Pa.1978) (Becker, J.) Furthermore, the protection

afforded prosecutorial decisions extends even to prosecutors at the lowest level. *See United States v. Panza,* 381 F.Supp. 1133 (W.D.Pa.1974).

With these principles in hand, the United States Court of Appeals for the District of Columbia, when presented with a similar factual scenerio, found a plaintiff's action barred by the discretionary function exception. *Gray v. Bell,* 712 F.2d 490 (D.C.Cir. 1983). In so holding the *Gray* court expanded the discretionary function umbrella over not only the decision to prosecute but also over decisions concerning how best to investigate alleged criminal activities. It reasoned that "each allegation of improper investigatory conduct is inextricably tied to the decision to prosecute" and to separate the allegations would be to "elevate the form of Gray's complaint over its essence." *Id.* at 516.

I fully agree with *Gray* to the extent it holds separating allegations of improper investigatory techniques from the decision to prosecute would be an exercise in semantic obfuscation. Deciding how to investigate, who to investigate, and how to present evidence to the proper authorities are classic examples of immunized prosecutorial conduct. *See Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). *See also United States v. Faneca,* 332 F.2d 872, 875 (5th Cir.1964), *cert. denied,* 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268 (1965) ("It is clear that the United States has a *duty* to maintain law and order and to enforce the commands of its courts; just how best to fulfill this duty is wholly within the *discretion* of its officers.") (emphasis in original). Furthermore, such conduct is exclusively within the province of the executive branch making it exactly the type of conduct the discretionary function exception was intended to protect from judicial branch interference. *See Gray v. Bell,* 712 F.2d 490 (D.C.Cir.1983).

Plaintiff's allegations that Officer Kimmel failed to disclose to the prosecuting authorities the weaknesses in his evidence

and that Kimmel initiated criminal proceedings only to "save face" does not require a different result. Complaint ¶ 19. Despite plaintiff's allegations of intentional conduct, his response to defendant's summary judgment motion contains no supporting evidence. At best, the record shows that government employees may have been negligent in their decision as to what evidence should have been presented.[3] Accordingly, this case is easily distinguishable from cases where a government agent intentionally gave false evidence in order to prosecute an individual, *see Heywood v. United States*, 585 F.Supp. 590 (D.Mass.1984), because in those cases the key factor is that the government agent simply possessed no discretion to act as he did. *See id. See also Bergmann v. United States*, 689 F.2d 789, 792 (8th Cir.1982) ("discretionary function exception inapplicable to allegations that government employees ignored or failed to comply with regulations or policies designed to guide their actions"); *Staton v. United States*, 685 F.2d 117 (4th Cir.1982) (Park ranger's shooting of hunting dog not discretionary function despite federal regulation providing for such activity because ranger's supervisors had eliminated ranger's discretion to shoot by issuing directive that all wild dogs should be captured, not killed.) In the absence of false testimony, it is clear that federal officials have broad discretion in deciding what evidence should be presented to prosecuting authorities.

In reaching the foregoing conclusion I am fully mindful of the standards guiding the grant of summary judgment. *See Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438–39 (3d Cir.1982). However, I am also mindful that when a summary judgment motion is filed, the opposing party may not rely on unsupported allegations. As stated in the oft cited case of *Whitaker v. Coleman*, 115 F.2d 305, 306 (5th Cir. 1940) "its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer at trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists."

In this case the only evidence adduced by plaintiff suggests a negligent investigation and a decision to prosecute which in itself may have been negligent because of the tenuousness of the evidence. While in the typical case it could be argued that this factual evidence is enough to get to the jury, such evidence is insufficient in matters like that presented *sub judice*. Otherwise, federal law enforcement personnel would be continually placed between the scylla of acting too quickly thereby evidencing maliciousness and the charybdis of acting too slowly thereby negligently permitting dangerous elements to roam loose in the population. *See, e.g., Bergmann v. United States*, 689 F.2d 789 (8th Cir.1982) (wrongful death action alleging government was negligent in the selection of an individual for participation in Federal Witness Security Program where, while participating in the program, he murdered plaintiff's husband); *Payton v. United States*, 679 F.2d 475 (5th Cir.1982) (action by murder victim's family for negligent release of a "known homicidal psychotic" who after release murdered plaintiffs' decedent).[4] Furthermore, as stated in *Smith v. United States*, 375 F.2d 243, 247 (5th Cir.1967), "if the government could be held liable for prosecuting or failing to prosecute such a case its choices in this area could quite conceivably be affected by such a suit. Thus, a policy decision of the federal government might be influenced by a plaintiff with no governmental responsibility."

In essence, to accept plaintiff's theory of negligent prosecution would be to allow a plaintiff to bypass the well established rule that prosecutorial decisions are protected merely by alleging he was arrested, had the charges dismissed, the arresting officer

---

**3.** The issue of negligence, however, "is not relevant to the discretionary function inquiry" because if discretionary even negligent conduct is protected. *General Public Utilities Corp. v. United States*, 745 F.2d 239, 243 (3d Cir.1984).

**4.** Both of these actions were found barred by the discretionary function exception.

did A, B, and C when with the benefit of hindsight it would have been better for him to do X, Y, and Z, had the officer done X, Y, and Z plaintiff would not have been arrested, and therefore, malice existed on the part of the officer. Such a theory is entirely too foreign to the well-established principle that prosecutorial decisions are protected even if those decisions evidence an abuse of discretion. *See Estate of Callas v. United States*, 682 F.2d 613 (7th Cir.1982). Furthermore, as stated in *Lambertson v. United States*, 528 F.2d 441 (2d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976), "a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Id.* at 443 (citing *United States v. Faneca*, 332 F.2d 872 (5th Cir.1964), *cert. denied*, 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268 (1965); *Klein v. United States*, 268 F.2d 63 (2d Cir.1959); *Coffey v. United States*, 387 F.Supp. 539 (D.Conn.1975)). In so doing courts must always protect against "judicially admit[ting] at the back door that which has been legislatively turned away at the front door." *Laird v. Nelms*, 406 U.S. 797, 802, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972).

Finally, I recognize that other courts would not necessarily agree with my analysis. For instance, in *Wright v. United States*, 719 F.2d 1032 (9th Cir.1983), the plaintiff had been indicted for failing to file tax returns and the filing of false tax returns. After the government dismissed the indictment and abandoned its prosecution of Wright, he filed a FTCA action alleging the indictments amounted to malicious prosecution. The Ninth Circuit after noting that "the decision whether or not to prosecute a given individual is a discretionary function" noted that implementation of the decision to prosecute "including the nature of his [the I.R.S. Agent's] testimony before the grand jury, is not immune as a discretionary function." *Id.* at 1035.

*Wright* and *Gray*, represent the polar extremes, and I concur in the reasoning and the result reached in *Gray*. Furthermore, my analysis of other cases leads me to believe the majority of courts would also follow *Gray*. For example, in *Caban v. United States*, 671 F.2d 1230 (2d Cir.1982), the Second Circuit concluded an immigration officer's negligent decision to detain an individual was not protected as a discretionary function. In so deciding, the Second Circuit stated the decision was not discretionary because determining whether someone is an American citizen and thus entitled to enter the United States is an "objectively verifiable fact." *Id.* at 1233. Significantly the *Caban* court then noted that "compared to the decision of the INS agents here, the decision of a narcotics agent as to whether there is probable cause to search, seize, or arrest raises many more competing considerations." *Id.* at 1235. Similarly, in *Pooler v. United States*, 609 F.Supp. 198 (E.D.Pa.1985), an action based on the same undercover investigation plaintiff challenged in this case, Chief Judge Luongo reached the same result I do here.

For all of the above reasons, I find plaintiff's complaint must be dismissed.