Stanley Milton GLICKMAN, Plaintiff,

v.

UNITED STATES of America, Sidney Gottlieb, in his individual and in his official capacities, Richard Helms, in his individual and in his official capacities, John Does, unknown agents of the Central Intelligence Agency, Defendants.

No. 83 Civ. 2458.

United States District Court, S.D. New York.

Dec. 30, 1985.

James I. Meyerson, New York City, for plaintiff.

Jane E. Booth, U.S. Atty's. Office, for defendants.

## OPINION

GRIESA, District Judge.

Plaintiff Stanley Glickman brings this lawsuit against defendant United States of America and against defendants Richard Helms and Sidney Gottlieb, in their individual capacities and in their official capacities as former officials of the CIA. Also named in the complaint are John Doe defendants, unknown agents of the CIA. Plaintiff seeks to recover for an alleged administration of lysergic acid diethylanide ("LSD") to plaintiff and a subsequent failure to treat plaintiff or to inform him of the drugging. Plaintiff has set forth several common law tort claims against the United States, and several *Bivens* claims (causes of action against officials implied by the courts to remedy violations of constitutional rights) against the individual defendants. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1346(b) (jurisdiction for tort claims against the United States) and 28 U.S.C. § 1331 (federal question jurisdiction).

The United States moves under Fed.R. Civ.P. 12(b)(1) to dismiss the complaint as against it for lack of subject matter jurisdiction, or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Helms and Gottlieb move under Fed.R. Civ.P. 12(b)(2) and (3) to dismiss the complaint as against them for lack of jurisdiction over the person or for improper venue.

The motions are denied. As will be described, the denial of certain of the motions is occasioned by an inadequate factual record at the present time. As to these motions, their denial is without prejudice to renewal at a later time.

The complaint alleges that the CIA had a program to test experimental drugs on American citizens without their knowledge. It is alleged that both defendant Gottlieb and defendant Helms were in the CIA and were involved in the planning and execution of this program. The complaint further alleges that in October 1952 plaintiff was pursuing a promising career as an

artist in Paris, having had one of his works accepted for exhibition at the Metropolitan Museum of Art in New York City. It is alleged that one evening he was drinking coffee at The Select Cafe, and encountered a group of Americans who insisted on buying him a drink, despite his repeated refusals. The complaint alleges that plaintiff believes that the Americans were agents of the United States Government, and that the group may have included defendant Gottlieb. It is alleged that plaintiff finally agreed to have a cordial, which was obtained for him by one of the Americans. The complaint alleges that it is believed that the persons who gave plaintiff the drink inserted in it the drug L.S.D. The complaint alleges that surreptitious drugging of plaintiff was done as part of the CIA program to test, on unwitting persons, the effects of L.S.D. as a potential weapon, a program initially named "Bluebird," later renamed "Artichoke," and ultimately named "MKULTRA."

It is alleged that this program was designed and set in operation from the United States, specifically Washington, D.C. and New York, New York.

According to the complaint, following plaintiff's taking the drug, plaintiff experienced various distortions of his mind, including a sense of unusual powers, a warping of distance, a melding of colors, and difficulty in speech. The complaint alleges that plaintiff was taken to a hospital in Paris by agents of the United States Government, where he was given drug treatment, including experimental electroshock treatment. The complaint alleges that plaintiff has never fully recovered from this experience, continues to suffer severe mental distress, and is unable to pursue his chosen occupation.

According to the complaint, the United States Government has continued to hide the fact of its wrongdoing to plaintiff, and has never offered to assist or treat him.

The complaint alleges nine causes of action. The first four are against the United States. These are under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* The first alleges negligence, the second invasion of privacy, the third intentional infliction of emotional distress, and the fourth deceit.

The remaining causes of action are against Gottlieb, Helms and unknown United States Government agents. They are brought under various provisions of the United States constitution, pursuant to the decision in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The fifth cause of action alleges violation of the right of privacy guaranteed by the Fourth Amendment; the sixth alleges violation of the First Amendment rights of free speech and association; the seventh alleges unreasonable search and seizure in violation of the Fourth Amendment; the eighth alleges deprivation of life, liberty and property without due process of law, in violation of the Fifth Amendment; and the ninth alleges cruel and unusual punishment in violation of the Eighth Amendment.

The complaint requests compensatory and punitive damages, and also a declaratory judgment.

One set of motions is made by the United States. Another set of motions is made by Gottlieb and Helms.

*Motions by the United States*
*Scope of Administrative Claim.*

■ Under the Federal Tort Claims Act ("FTCA"), no claim may be sued upon that was not presented first at the appropriate agency.

Plaintiff submitted an administrative claim to the CIA dated December 22, 1981. The claim stated:

> Upon information and belief, on or about the above dates [10/1/52–11/30/52] these unknown agents of the Central Intelligence Agency administered and caused to be administered to me unknown quantities of L.S.D., or a like substance, without my knowledge or consent, and further, without my consent, administered to me a series of electric shocks.

The United States contends that this claim relates only to the tort of battery, and that the claim does not assert the theories relied upon in the causes of action in the complaint. According to the Government, this means that the case against the Government must be dismissed, because the United States has not waived its sovereign immunity for batteries committed before 1974. 28 U.S.C. § 2680(h). The statute was amended in 1974 to allow claims for certain types of batteries, but as of 1952 there was a blanket exception for this type of tort.

The United States reads the administrative claim too narrowly. The Fifth Circuit has stated that an administrative claim is sufficient if it "brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant," and that if legal theories are implicit in what is stated in an administrative claim, those theories can be pursued in a litigation. *Rise v. U.S.*, 630 F.2d 1068, 1071, (5th Cir.1980).

■ In the present case, plaintiff's administrative claim is a sufficient basis for the complaint in this lawsuit against the United States. Although the literal language of the administrative claim does not expressly speak of a covert CIA plan to infringe the rights of citizens, or of the various legal theories relied upon in the complaint, such claims are necessarily implicit in what is stated in the administrative claim.

It would be particularly inappropriate in the present case to take a narrow view of the administrative claim, since what is alleged is a highly unusual secret plan to experiment with unwary citizens and to cover the tracks of the alleged agency actions. *See Sims v. CIA*, 642 F.2d 562 (D.C. Cir.1980). Whatever the facts are, they are in the control of defendants. When the administrative claim was presented to the CIA, it was sufficient to allow the CIA to investigate the matter and evaluate the merits of the claim. No more detailed administrative claim was required.

## The "Foreign Country" Exception.

The FTCA excludes liability for "any claim arising in a foreign country." 28 U.S.C. § 2680(k). This exception rests on a congressional unwillingness to subject determinations of United States Government liability to foreign law. *United States v. Spelar*, 338 U.S. 217, 221, 70 S.Ct. 10, 12, 94 L.Ed. 3 (1949). Under the FTCA, liability is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). It has been said, as well, that the provision rests on the idea that the United States usually should not be burdened with the difficulty of obtaining witnesses and evidence in foreign countries. *Burna v. United States*, 240 F.2d 720, 722 (4th Cir.1957).

■ Defendant contends that plaintiff's claims against the United States arose in France, where he claims to have been drugged and electro-shocked. Although the briefs submitted do not discuss the legal standard for determining where the claim arose, and the decisions interpreting § 2680(k) are few, *see Sami v. United States*, 617 F.2d 755, 762 (D.C.Cir.1979), the following rule emerges from the cases. For purposes of the FTCA, a claim arises where the tortious act or omission occurs, not where the injury is felt. A claim arises in the United States, and thus is not barred by § 2680(k), where the act or omission occurs in the United States but the injury is sustained in a foreign country. *See, e.g., Beattie v. United States*, 756 F.2d 91, 96 (D.D.C.1985); *Sami, supra* p. 762; *Leaf v. United States*, 588 F.2d 733 (9th Cir.1978).

■ The CIA program to administer drugs to unwitting persons obviously originated in the United States, even though certain activities to implement the program were carried out in foreign countries. The complaint so alleges. Consequently, the claim here is not excluded by the "foreign country" exception.

## The "Discretionary Function" Exception

The United States next relies upon the "discretionary function" exception in the FTCA. 28 U.S.C. § 2680(a).

The leading Second Circuit case interpreting § 2680(a) recognizes that this exception could swallow the general rule of waiver of sovereign immunity, since all government employees exercise some discretion in the discharge of their duties. *Caban v. United States*, 671 F.2d 1230, 1232 (2d Cir.1982). Various tests have been developed by the courts over the years to aid in drawing the line between protected and unprotected activities. *Caban* concluded that § 2680(a) means that the Government should be immune from liability for "activities that require the alleged tortfeasor to consider and weigh competing policies in arriving at his decision." 671 F.2d at 1233. The purpose of the provision, in *Caban's* view, is to preserve the separation of power between the branches of government. This test "protects courts from 'involve[ment] in making ... decision[s] entrusted to other branches of the government,' ... and especially from questions involving 'not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency,'...." 671 F.2d at 1233.

In *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Supreme Court stated that § 2680(a) "plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." 104 S.Ct. at 2765 (footnote omitted). The Court concluded that this emphasis on protection for regulatory activities "suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." 104 S.Ct. at 2765. In *Varig*, a suit against the United States for failing to inspect certain aspects of an airplane was held barred by § 2680(a), because "[d]ecisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program...." 104 S.Ct. at 2768.

In the case at bar, the United States asserts that § 2680(a) bars plaintiff's claims because "any decision concerning the implementation of a drug experimentation program would necessarily involve considerations of public policy." Reply Brief at 8. However, this assertion really does not reckon with the extraordinary nature of the allegations made by plaintiff in this case. What plaintiff is alleging is conduct of such a serious and malevolent nature as to be beyond any reasonable discretion on the part of a Government agency. Plaintiff is alleging something which does not involve normal regulatory activities or the weighing of policy factors within the scope of proper governmental power, but rather something which goes beyond the constitutional powers of the Government, and seriously violates the constitutional rights of a citizen. It cannot be said that Congress meant to withdraw this kind of allegation from judicial scrutiny under the "discretionary function" exception.

*Other Contentions of the United States.*

The United States asserts that the third cause of action for intentional infliction of emotional distress is barred. The United States raised this point at a hearing, but the matter has not been addressed in the papers. This question will be deferred until a later point in the proceedings.

Plaintiff's fourth cause of action is based on the theory of misrepresentation and deceit. It is barred by the express language of 28 U.S.C. § 2680(h). The fourth cause of action is dismissed.

The United States makes a brief contention that a declaratory judgment cannot be entered against the United States in this suit. Disposition of this issue should await fuller briefing.

One point not raised on the motion of the United States relates to punitive damages. The statute specifically prohibits an award of punitive damages in an

action under the FTCA. 28 U.S.C. § 2674. On its own motion, the court dismisses the claim for punitive damages against the United States.

### Individual Defendants

Both of the named individual defendants—Gottlieb and Helms—move to dismiss for lack of personal jurisdiction or improper venue.

Gottlieb was served in December 1983 at his home in Virginia. Helms was served in October 1983 at his home in Washington D.C.

Plaintiff asserts personal jurisdiction on the basis of two sections of the New York long-arm statute. Plaintiff relies on CPLR § 302(a)(1), which provides for jurisdiction over a defendant who "transacts any business within the state" out of which the cause of action arises. Plaintiff also relies on § 302(a)(3), which provides for jurisdiction over a defendant who "commits a tortious act without the state causing injury ... within the state," if the defendant fulfills certain other conditions, such as engaging in a persistent course of conduct in the state.

■ As already described, the complaint alleges that the CIA's drug testing program was designed and set in operation from Washington, D.C. and New York, New York. The affidavit of plaintiff's attorney asserts that the information thus far obtained about the drug program indicates that there was substantial activity relating to the program in New York.

Both Gottlieb and Helms have submitted affidavits. Gottlieb asserts that, at the time of the alleged incident in 1952, he was Chief of the Chemical Branch of the Technical Services Staff Unit for the CIA. He alleges that his office was in Washington, D.C., where he made "all policy decisions." He asserts that he had "no significant contacts in New York" in 1952. He states that he "made no more than six trips per year to New York to observe scientists and researchers" doing work for the CIA. Gottlieb left the CIA in 1973. He now resides and works in Virginia. He asserts that he now transacts no business in New York and does not derive any revenue from any activities in New York.

The Helms affidavit mistakenly speaks of the incident complained of by plaintiff as occurring in 1954. Helms goes on to state that in 1954 he had "no significant contacts with New York." Helms alleges that at the time of the alleged incident he was an officer in the CIA, with his office in Washington, D.C. He says that he made "all policy decisions" in his Washington office, and never made any decisions at the CIA office in New York.

Both the Gottlieb and Helms affidavits are obviously carefully constructed to avoid the real issues here. Gottlieb does not deny playing a leading role in the drug testing program, with which he is charged by plaintiff. He admits making up to six trips to New York per year during the relevant time period. Yet, he does not state in any detail what it was he was doing in New York, or elsewhere, on this program. His denial of "significant contacts with New York" in 1952, is of no assistance, since one has no idea of his definition of "significant."

The Helms affidavit is equally unsatisfactory. Helms does not deny a role in the drug testing program, but neither does he provide any real information as to what he did or did not do in connection with this program in New York or elsewhere. His denial of "significant contacts with New York" solves nothing.

Plaintiff is entitled to develop the factual record further, before there is any decision on the jurisdictional question.

As to venue, the relevant statute provides for venue where all of the defendants reside or where the claim arose. It appears that Gottlieb and Helms do not reside in New York, so that venue is proper in New York only if the claim arose here.

The Supreme Court has called "occasionally fictive" the assumption that a claim may arise in only one judicial district. *Leroy v. Great Western Corp.*, 443 U.S. 173,

185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). If it is unclear where a claim arose, "a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." 443 U.S. at 185, 99 S.Ct. at 2717 (emphasis in original). The cases are in substantial agreement that a claim may be said to arise wherever some substantial operative facts giving rise to the claim occurred. *See* cases cited at 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure ¶ 3806 n. 24 (1985 Supp.).

The complaint alleges substantial operative facts occurring in New York. There is no sufficient denial of this by defendants. Consequently. venue in this district is proper.

### Conclusion

The motion of the United States to dismiss the claims against it is denied, except that the Fourth Cause of Action and the claim for punitive damages against the United States are dismissed.

The motions of defendants Gottlieb and Helms to dismiss for lack of personal jurisdiction are denied, without prejudice to renewal after a fuller development of the facts. The motions of these defendants to dismiss for improper venue are denied.

So ordered.