Gregory C. MARTIN, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 93 Civ. 0648(HB).

United States District Court,
S.D. New York.

July 31, 1997.

Nancy L. Savitt, U.S. Atty. Office, New York City, for U.S.

### OPINION AND ORDER

BAER, District Judge:

Plaintiff alleges the Bureau of Prisons was negligent when it required him to walk through inclement weather from his housing unit at FCI Otisville to the hospital for his medication on the evening of February 15, 1990. It was agreed beforehand that the case would be bifurcated and a bench trial commenced July 16, 1997, as to the liability aspect of the case and with particular reference to the applicability of the discretionary function exception to the Federal Tort Claims Acts, 28 U.S.C. § 2680(a). According to the Government, the discretionary function exception precludes claims against the United States where the incident which forms the basis for the lawsuit results from a violation of agency policy, *see Fazi v. United States*, 935 F.2d 535, 537 (2d Cir.1991). Alternatively, the government argues that plaintiff has failed to shoulder his burden of proof with respect to the elements of negligence under New York law.

### BACKGROUND

The plaintiff testified that on February 15, 1990, while a prisoner at FCI Otisville, he fell on the ice and suffered a variety of injuries primarily to his head, hand and knee. Two witnesses testified at this trial. The plaintiff, Gregory Martin, testified and through him joint exhibits 1 through 9 and 12 were introduced into evidence. He told us that he had been released from prison in 1995 and that while the incident was now 7–1/2 year ago, he

remembered it clearly. He went on to tell us that the incident occurred at approximately 9:40 p.m. when he was being taken for his pills. There was testimony that before 1990, pills had been dispensed through visits to units by a Physician's Assistant (PA), but that as of the time plaintiff arrived at Otisville, the policy had been changed and it required instead that the inmates go to the hospital to receive their pills. He testified that it had been snowing since 7:00 or 8:00 a.m. and that while the inmates usually lined up in bad weather somewhere between 8:15 and 8:30 p.m. for the trip to the hospital, on this evening he had to remind the guard that it was time to go for the pills and the trip to the hospital was delayed about an hour and commenced around 9:20 or 9:30 p.m. He testified further that the boots he wore had no tread on the soles but they had tread on the new heels. He testified that he had told the guard that he would rather not go to the hospital but the guard indicated that he had to go and that if he did not go, he would be taken there and would end up in the Segregated Housing Unit (SHU) to boot. On the way they picked up additional men in front of an adjacent unit and were accompanied by two officers. The plaintiff's place in the line seems to differ between deposition and trial testimony, but in any event it was a slippery path and they were required to stay on the path even though the grass on either side provided firmer footing. They walked very slowly, taking baby steps. The plaintiff fell, hitting the prisoner in front of him. The inmate tried to help him up and it was then that he realized that his right hand could not support him. He testified that he mentioned the fall to both officers, but at his deposition he indicated that he did not tell either officer anything since he assumed that they both saw exactly what had happened. His testimony was to the effect that one of the officers told him to mention it when they reached the hospital and when he did get to the hospital and his turn came, he told the PA what had happened. The PA told him to go back and put an ice pack on his hand, that he could not use the new X-ray equipment because he was unfamiliar with it and that if

there was a problem the next day, he should return to the hospital.

The officer who testified, Mr. McBride, had no recollection of February 15, 1990 but his recollection was refreshed by the log, joint exhibit 8. That log reflected both that he was on duty that day and at the time of the incident and that there had been snow on that day. More particularly, the log reflected that at 9 o'clock a Mr. F. Doty arrived to sand the two mile drive to the institution from the main road. He had no recollection of the plaintiff, the fall or any conversation about the fall. The weather report reflected that at Middletown, some 10 miles from Otisville, there had been snow during the day but reflects an accumulation of only .09". McBride testified that the policy with respect to the "pill line" had been changed primarily because of security reasons and the safety of the PA. It was his view, to which plaintiff did not object, that the policy change came about because the PA might fall on his way to or from a prison unit, just as the plaintiff here alleged he fell, and then many prisoners would be without their pills and in addition, the taking of the medication, including syringes, etc. to the units could result in thefts and assaults. While he did not have any independent recollection of the incident, he testified to the custom and practice with respect to snow and ice and told the Court that essentially from the first flake, a crew of six inmates rotated at fixed intervals was assigned to nothing but shovel and sand detail and that the shoveling and sanding continued to the conclusion of any storm. He also testified that the two mile road that required the snow removal was outside the prison walls and had nothing to do with the walk inside the prison grounds where the incident happened.

After the testimony, the Government argued that the Court lacked jurisdiction because the claim fell within the discretionary function exception. The Government argued that prison officials know best whether prisoners should travel to the hospital or the hospital to the prisoner and they have discretion to make that decision. The plaintiff argued that this was not discretionary because even a discretionary exception required due care and that due care was not utilized in this instance. The plaintiff also maintained that the walk was negligently maintained, and that a duty of care was owed and breached.

■ The discretionary function exception is a little more complicated than the Government's argument suggests. The Government asserts the exception applies because the policy to have inmates travel to the hospital is exactly the sort of discretionary choice the discretionary function exception was meant to protect from judicial inquiry in tort cases. "The discretionary function exception precludes claims based on decisions at the policy or planning level. Decisions at this level include decisions as to whether or not to adopt regulations and as to the content of such regulations." *Fazi*, 935 F.2d at 537. To the extent plaintiff's claim is based on the adoption of the policy requiring prisoners to go to the hospital for their medication, it is barred by the discretionary function exception. *Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir.1982) (discretionary function exception would apply if suit were based on adoption of policy at issue).

■ Plaintiff's claim, however, goes not to the adoption of the policy but to its implementation on the night in question; plaintiff alleges the transport to the hospital under the circumstances was negligent. "The United States does not enjoy immunity from liability for the want of due care by its personnel in the implementation at the operational level of policy choices previously made, often by others." *Petznick v. United States*, 575 F.Supp. 698, 702 (D.Neb.1983); *see Caban*, 671 F.2d at 1233 (recognizing distinction between promulgation and implementation of policy). Plaintiff's allegations here fall squarely on the implementation side of the promulgation/implementation dichotomy. Accordingly, his claim that the BOP was negligent in maintaining the walk to the hospital and requiring prisoners to go there on the night in question is not barred by the discretionary function exception.

■ While he has met the jurisdictional hurdle, plaintiff has failed to establish liability for negligence. *Flechsig v. United States*,

**830**

991 F.2d 300, 303–04 (6th Cir.1993) (elements of state tort law apply). The elements of a negligence claim in New York require plaintiff to show (i) a duty or obligation recognized by law, (ii) a breach of duty, (iii) a causal connection between the conduct of the prison and the injury to the plaintiff and (iv) loss or damage resulting from that breach of duty.

Here, plaintiff has failed to meet the second element—breach of duty. In reaching this conclusion, I make the following findings of fact. First, based on the undisputed testimony at trial, it was still snowing at the time the prisoners were taken to the hospital. Second, it was the practice and custom at FCI Otisville that prisoners were assigned to clear the prison walks as soon as it started snowing. As there is no indication that this practice was not followed on the date in question, I infer that it was followed and that snow removal activities had been ongoing all day. Further, I find that the accumulation, at least for the entire day, was negligible and was unlikely to have created the icy conditions complained of. Third, I find that while the existence of an ice patch is in the first instance unlikely, the defendant had neither actual nor constructive notice of the ice patch on which plaintiff allegedly slipped. Indeed, as noted above, my conclusion from the testimony and the weather reports is that there likely was no ice patch. Each of these factual findings negates plaintiff's claim of negligence under New York law.

As to the ongoing storm, New York law provides that a party has "a reasonable period of time *after the cessation of a storm* in which to take protective measures to correct storm-created hazardous ice and snow conditions. The lapse of reasonable time does not occur while a storm is in progress." *Fusco v. Stewart's Ice Cream Co.*, 203 A.D.2d 667, 610 N.Y.S.2d 642, 642 (1994) (emphasis added); *see also Jefferson v. Long Island College Hosp.*, 234 A.D.2d 589, 652 N.Y.S.2d 528 (1996). Based on my finding above that the storm was still in progress at the time the plaintiff was taken to the hospital, his claim cannot succeed. *See also Simmons v. Metropolitan Life Ins. Co.*, 84 N.Y.2d 972,

622 N.Y.S.2d 496, 497, 646 N.E.2d 798, 799 (1994) (plaintiff failed to establish prima facie case of negligence where no notice of ice patch established).

## CONCLUSION

Based on the foregoing, I find that plaintiff has not established defendant's negligence. The complaint must be and is DISMISSED and the clerk is directed to close the file.

**SO ORDERED.**