**Inez COCHRAN, Plaintiff,**

v.

**UNITED STATES of America and Bowling Mgt. Assocs, Inc., Defendants.**

**Bowling Mgt. Assocs, Inc., Cross–Claim Plaintiff,**

v.

**United States of America, Cross–Claim Defendant.**

**No. 3:97CV389/RV.**

United States District Court, N.D. Florida, Pensacola Division.

Sept. 1, 1998.

David Warner Hiers, Bell Schuster Wheeler et al., Pensacola, FL, for Inez Cochran, plaintiff.

Michael P. Finney, U.S. Attorney, Northern District of Florida, Pensacola, FL, for United States, defendant.

Robert Scott Traweek, Janecky Newell Potts Hare & Wells, Pensacola, FL, for Bowling Mgt. Assocs Inc., defendant.

## *ORDER*

VINSON, Chief Judge.

Pending is the United States of America's motion to dismiss. (Doc. 15) In the alternative the government moves for summary judgment, and Rule 56 notice was provided to allow consideration of matters outside the pleadings.

## I. *FACTUAL BACKGROUND*

This is an action pursuant to the Federal Tort Claims Act ("FTCA") [28 U.S.C. §§ 1346(b), 2671–2680], and state negligence law. The plaintiff alleges that due to the negligence of the United States of America and Bowling Management Associates, Incorporated ("BMA"), she tripped and fell over a stack of panels that BMA was using to resurface the lanes in the Star and Strikes Bowling Center ("Center"), at the Naval Air Station in Pensacola, Florida ("NAS Pensacola"). The United States of America was, and is, the owner and operator of the Center, and BMA was the independent contractor hired to actually perform the resurfacing work.

J. Rogers Patrick, the director of the Navy Morale, Welfare, and Recreation Department at NAS Pensacola, contracted with AMF Corporation (not a party to this action) to purchase lane resurfacing material for the Center. AMF included the installation price of the material in its quote to the government and subcontracted the installation work to BMA. BMA was in the process of resurfacing the lanes at the Center on the day of the plaintiff's accident. Before beginning the project, BMA workmen told Jesse Shealy, the Center's manager, that it was their usual practice to work with all of the panels stacked

inside the bowling alley. Based on the suggestions of the BMA employees, Shealy selected five sites within the Center on which to stack the material. According to the United States, Shealy selected sites that would disrupt the operation of the Center as little as possible, and, at the same time, allow BMA's workmen easy access to the panels. Each panel was ⅝ inch thick, and measured 44 inches wide by 12 feet long. Four stacks were placed in the bowling alley's main walkway, and a fifth stack was placed between alleys 16 and 17. Neither the United States nor BMA placed warning signs or barriers anywhere in the Center. All of the stacks were originally about table height before any work was started. However, the height of each stack was incrementally reduced by the BMA workmen as the project progressed. While the work was in progress, the plaintiff tripped over one of the stacks in the walkway and fractured her hip. At the time of the accident, there were only six or eight lanes remaining to be resurfaced, and the stack that the plaintiff tripped over had been reduced to a height of approximately knee level.

The plaintiff alleged in her complaint that the United States was negligent by: (1) keeping the bowling alley open during the renovation; (2) creating or allowing a dangerous condition to exist; (3) failing to warn the plaintiff of the dangerous condition created by the panels; and (4) failing to properly supervise its contractor.

The United States filed the present motion to dismiss [1] on three grounds. First, the United States contends that the plaintiff failed to state a cause of action against

it for negligence because the stack of material that the plaintiff tripped over was open and obvious, and, therefore, not a hazardous condition. Second, the United States asserts that if I determine that the stack was a hazardous condition, then I should find that it was caused exclusively by BMA. According to the United States, it was the height of the stack that the plaintiff tripped over that caused the dangerous condition, and since the reduction in the height of the stack was caused exclusively by the work being done by the BMA workers, it cannot be held liable by virtue of the independent contractor exception to the FTCA. Third, the United States contends that if I find that it contributed to the creation of the hazardous condition by keeping the center open during the renovation, or by allowing BMA employees to stack the panels inside the Center, then it is shielded from liability by virtue of the discretionary function exception to the FTCA.

## II. DISCUSSION

### A. Motion to Dismiss Standard

■ There are two forms of attacks on subject matter jurisdiction under Rule 12(b)(1), Federal Rules of Civil Procedure: facial attacks and factual attacks. "Facial attacks on the complaint require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)).[2]

---

1. The United States moved to dismiss this case for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). However, it is clear that what the United States is actually challenging by raising the FTCA's independent contractor and discretionary function exemptions is my jurisdiction to hear this case pursuant to Rule 12(b)(1). *See, e.g., Williams v. United States*, 50 F.3d 299, 304–05 (4th Cir.1995); *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 972 (10th Cir.1994); *Lesoeur v. United States*, 21

F.3d 965, 967 (9th Cir.1994); *Fazi v. United States*, 935 F.2d 535, 539 (2d Cir.1991); *Cisco v. United States*, 768 F.2d 788 (7th Cir.1985).

2. The Eleventh Circuit adopted as binding precedent all cases decided by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

"Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

In this case, the United States' motion primarily raises a facial attack to the complaint. The United States argues in its memorandum of law that there are no issues of material fact with regard to whether I have jurisdiction to grant the relief sought, and that subject matter jurisdiction is lacking. According to the United States, the plaintiff's claims are barred by the FTCA's discretionary function and independent contractor exceptions, even if the plaintiff's allegations of negligence are taken as true. As with a Rule 12(b)(6) motion, the allegations of the complaint are taken as true when the moving party has raised a facial attack to the complaint. *See Lawrence v. Dunbar, supra*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981)). To the extent that the motion raises a factual attack, the material facts are not in dispute except as noted.

**B.  *Analysis***

■ The method of analysis of this matter has been set out by the Eleventh Circuit: "Consideration of a case such as this under the FTCA requires a three-step inquiry: First, are the alleged negligent acts or omissions discretionary functions which are immune from suit under the FTCA? Second, if not, does FTCA's independent-contractor exception apply to insulate the United States against liability? Third, if not, are the theories of liability asserted cognizable under the applicable state tort law?" *Dickerson, Inc. v. United States*, 875 F.2d 1577, 1580 (11th Cir.1989). This three step inquiry is necessary because the determination of whether the plaintiff's negligence claims are barred by the FTCA's discretionary function or independent contractor exceptions presents a question of subject matter jurisdiction,

which must be resolved first before any attempt is made to reach the merits of those claims. Accordingly, I will first consider the discretionary function exception and then the independent contractor exception.

**(1)  Discretionary Function Exception**

The FTCA waives the United States' sovereign immunity from suit in federal court for its employees' negligence. *See* 28 U.S.C. § 1346(b). However, the discretionary function exception provides that the United States' sovereign immunity is not waived as to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

■ The Supreme Court of the United States has developed a somewhat mechanical two-part test for determining whether challenged conduct falls within the discretionary function exception. First, the trial court should determine whether the nature of the challenged conduct involves "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)); *see also Ochran v. United States*, 117 F.3d 495, 499 (11th Cir.1997). For example, if a federal statute or regulation mandates the course of action that a government employee must follow in a certain circumstance, no element of judgment or choice is present, and the discretionary function exception does not apply. *Berkovitz v. United States, supra*, 486 U.S. at 536, 108 S.Ct. at 1958. However, if the challenged conduct involves an element of judgment or choice, then the court must determine under the second part of the test whether the judgment or choice is grounded in considerations of social, economic, and political policy. This is because "the purpose of the

[discretionary function] exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert, supra,* 499 U.S. at 323, 111 S.Ct. at 1273 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)).

■ Under the first part of the test, the "relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Hughes v. United States,* 110 F.3d 765, 768 (11th Cir.1997). Under the second part of the test, I must "look to the nature of the challenged decision[s] in an objective, or general sense, and ask whether th[ose] decision[s] are ones [I] would expect inherently to be grounded in considerations of policy." *Autery v. United States,* 992 F.2d 1523, 1530 (11th Cir.1993) (quoting *Baum v. United States,* 986 F.2d 716, 720–21 (4th Cir.1993)).

> When established governmental policy ... allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion ..., but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*United States v. Gaubert,* 499 U.S. 315, 324–25, 111 S.Ct. 1267, 1274–75, 113 L.Ed.2d 335 (1991).

■ In other words, even if there is no evidence that economic, social, or political policy concerns were the basis of the challenged decisions, the discretionary function exception still applies if the decisions are susceptible to that type of policy analysis. *See Dykstra v. United States Bureau of Prisons,* 140 F.3d 791, 795–96 (8th Cir. 1998); *Mesa v. United States.,* 123 F.3d 1435 (11th Cir.1997); *Hughes v. United States,* 110 F.3d 765, 768–69 (11th Cir. 1997); *Rosebush v. United States,* 119 F.3d 438, 440 (6th Cir.1997); *In re Joint Eastern & Southern Districts Asbestos Litigation,* 891 F.2d 31, 37 (2d Cir.1989) ("[I]t is unimportant whether the government actually balanced economic, social, and political concerns in reaching its decision."); *United States Fidelity & Guar. Co. v. United States,* 837 F.2d 116, 120–21 (3d Cir.1988).

■ In this case, the plaintiff does not contend that the Navy's decision makers, Patrick and Shealy, made decisions that violated a federal statute or regulation. Therefore, their decisions involved an element of judgment or choice, under the first part of the test. Next, I conclude that Patrick's and Shealy's decisions were susceptible to policy analysis. Both men stated in their depositions that, prior to the commencement of the resurfacing work, they weighed the advantages and disadvantages of closing the Center during the renovation. They determined that closing the Center would have inconvenienced many individuals, and would have reduced the Center's revenue from its bowling operations and its snack bar. Additionally, Shealy stated that he chose the stacks' locations in order to minimize the disruption of the Center, and, at the same time, allow BMA's workmen ready access to the materials in order to reduce the total amount of time that the project was expected to take. There is no question that these decisions were susceptible to policy analysis, and were, in fact, based on social and economic concerns. Thus, the United States is shielded from liability by virtue of the FTCA's discretionary function exception, both for Patrick's and Shealy's decision to keep the Center open during the renovation, and for Shealy's decision

regarding the placement of the resurfacing material in the Center.

The plaintiff concedes that the decision to keep the Center open during the renovation might be protected by the discretionary function exception. However, she argues that even if that decision was protected, that does not mean that all of Patrick's and Shealy's subsequent decisions were similarly protected. The plaintiff contends that once the United States makes a policy decision protected by the discretionary function exception, it must proceed with due care in the implementation of that decision. *See Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Andrulonis v. United States*, 952 F.2d 652 (2d Cir.1991); *Summers v. United States*, 905 F.2d 1212 (9th Cir.1990); *Caplan v. United States*, 877 F.2d 1314 (6th Cir.1989); *Noel v. United States*, 893 F.Supp. 1410 (N.D.Cal. 1995). According to the plaintiff, even if the United States cannot be held liable for its negligence in keeping the Center open, or for placing the stacks in the walkway, it can still be held liable for failing to warn her of the dangerous condition created by the stacks, and for failing to supervise its independent contractor.

■■■■ The United States, as a land owner, can be held liable for failing to warn invitees of hidden dangerous conditions on its land, or for failing to supervise its independent contractors, unless those decisions are within the scope of the discretionary function exception. *Kiehn v. United States*, 984 F.2d 1100, 1104 (10th Cir.1993); *Emelwon, Inc. v. United States*, 391 F.2d 9, 11 (5th Cir.1968).[3] Once again, the two part test mentioned above will determine whether those decisions are also within the discretionary function exemption.[4]

■■■■ The plaintiff has failed to point out any mandatory statute, regulation, or policy specifically requiring Patrick or Shealy to warn the Center's patrons about hazardous conditions, or to monitor the work of its independent contractors. Since there is no mandatory statute, regulation, or policy specifically requiring Patrick and Shealy to engage in such conduct, I find that the first part of the test is satisfied. Their decisions involved an element of judgment or choice. *See Dykstra v. United States Bureau of Prisons*, 140 F.3d 791, 795–96 (8th Cir.1998); *Hibble v. United States*, 133 F.3d 915 (4th Cir.1998) (Table opinion).

Under the second part of the test, I find that Patrick's and Shealy's decision whether to post warning signs in the Center is susceptible to a variety of policy considerations—including taking into account the needs of the Center's patrons, the number of hazards that might require a warning and the effectiveness of the various types of warnings that could be given, the desire

---

3. The United States is entitled to delegate its safety responsibilities to its independent contractor as long as no federal law or policy prohibits it from doing so. *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir.1997); *Phillips v. United States*, 956 F.2d 1071, 1075 (11th Cir.1992); *Johns v. Pettibone Corp.*, 843 F.2d 464 (11th Cir.1988); *Feyers v. United States*, 749 F.2d 1222 (6th Cir.1984). If the decision to delegate safety responsibilities to the independent contractor is based on social, political, or economic concerns, it is protected by the discretionary function exemption, and the United States cannot be held liable under the FTCA for any resulting harm. *Andrews v. United States*, supra, 121 F.3d at 1440. However, in this case, the contract between the United States and AMF is silent with regards to which party is responsible for

the safety of the Center's patrons during the renovation project. Without such an express delegation of the United States' safety responsibilities, I cannot find that it is protected on this ground.

4. I note that Patrick's and Shealy's decision not to warn the Center's patrons about the dangerous condition created by the stacks was not part of the initial protected policy decision to place the stacks inside the Center. *See e.g., Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 291 (3rd Cir.1995) (en banc); *Caplan v. United States*, 877 F.2d 1314, 1316 (6th Cir.1989); *Noel v. United States*, 893 F.Supp. 1410, 1420–21 (N.D.Cal. 1995).

to foster a relaxed atmosphere in the Center, and the need to conserve the Center's limited financial and human resources. Therefore, their decision not to warn about the danger posed by the stacks of resurfacing material falls within the FTCA's discretionary function exception. *Hughes v. United States*, 110 F.3d 765, 768–69 (11th Cir.1997); *see also Hibble v. United States*, 133 F.3d 915 (4th Cir.1998) (Table opinion); *Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir.1997) (Decisions concerning the proper response to hazards and the decision whether to warn of potential dangers are protected discretionary functions). *But see Faber v. United States*, 56 F.3d 1122, 1125 (9th Cir.1995); *Summers v. United States*, 905 F.2d 1212 (9th Cir.1990).

■ Similarly, the plaintiff's claim that the United States was negligent in supervising its independent contractor is also barred by the discretionary function exception. The exception "encompasses government decisions about how and how much to supervise the safety procedures of independent contractors." *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir.1997); *Kirchmann v. United States*, 8 F.3d 1273 (8th Cir.1993) ("Where no statute or regulation controls the government's monitoring of a contractor's work, the extent of monitoring required or actually accomplished is necessarily a question of judgment, or discretion, for the government."). Since I conclude that the discretionary function exception applies to Patrick's and Shealy's decisions on whether to supervise its independent contractor, and warn the plaintiff of the potential dangers associated with the work, the United States is immune from liability for any alleged negligence in that regard.

**5.** According to the United States, if the stack of resurfacing material was a dangerous condition, then it was created by BMA, not by any act of a government employee. The United States contends the hazardous condition was created by the reduction in the stack's height over time, not by its location within the

### (2) Independent Contractor Exception

Next, the plaintiff contends that the United States should be held liable under Florida law for its failure to remedy the dangerous condition created by its independent contractor, or for its failure to warn the plaintiff about its independent contractor's negligent activity. The plaintiff recognizes, according to the general rule, that the United States cannot be held liable for the negligence of its independent contractors. *See Dickerson, Inc. v. United States*, 875 F.2d 1577 (11th Cir.1989); *Emelwon, Inc. v. United States*, 391 F.2d 9 (5th Cir.1968). Pursuant to the FTCA, the United States is liable for the "ordinary common-law torts" of employees of federal agencies. *See Dalehite v. United States*, 346 U.S. 15, 28, 73 S.Ct. 956, 964, 97 L.Ed. 1427 (1953). However, Congress specifically excluded "any contractor with the United States" from the FTCA's definition of a "federal agency." *See* 28 U.S.C. § 2671.[5]

Nevertheless, the plaintiff contends that there are exceptions to the general rule. Both the former Fifth Circuit and the Eleventh Circuit have determined that the United States can be held liable under two theories of Florida law, both of which impose liability upon the employer of an independent contractor for the employer's own negligence. *See Dickerson, Inc. v. United States*, 875 F.2d 1577 (11th Cir. 1989); *Emelwon, Inc. v. United States*, 391 F.2d 9 (5th Cir.1968) (citing *Maule Industries, Inc. v. Messana*, 62 So.2d 737 (Fla. 1953); *Breeding's Dania Drug Co. v. Runyon*, 147 Fla. 123, 2 So.2d 376 (1941); *Peairs v. Florida Publishing Co.*, 132 So.2d 561 (Fla. 1st DCA 1961)).

The first theory of Florida law imposes a non-delegable duty on the employer to

Center. The United States also contends that the reduction in the height of the stack was under the exclusive control of BMA. Since BMA was an independent contractor, the United States claims that it cannot be held liable for BMA's negligence.

exercise reasonable care to prevent harm to third persons when the independent contractor is performing inherently or intrinsically dangerous work. *Dickerson, Inc. v. United States, supra,* 875 F.2d at 1583 (citing *Emelwon, Inc. v. United States, supra,* 391 F.2d at 11); *Florida Power & Light Co. v. Price,* 170 So.2d 293 (Fla.1964). The second theory of Florida law imposes a duty upon an employer who discovers a dangerous situation created by its independent contractor to either stop the operation or otherwise remove the danger. *Dickerson, Inc. v. United States,* 875 F.2d at 1582 (citing *Emelwon, Inc. v. United States,* 391 F.2d at 11); *see also* 2A Fla.Jur.2d, Agency And Employment § 139 (1998).

The law of this Circuit plainly holds that, under certain limited circumstances, the United States can be held liable for its own negligence in failing to prevent or remedy a dangerous condition created by its independent contractor. However, these two exceptions do not apply under the facts of this case. The *Dickerson* and *Emelwon* decisions are based on a determination that the discretionary function exemption did not apply in those cases. *See Dickerson, Inc. v. United States,* 875 F.2d 1577 (11th Cir.1989); *Emelwon, Inc. v. United States,* 391 F.2d 9 (5th Cir.1968). If the United States' alleged negligence falls within the scope of the discretionary function exemption, then that negligence is not actionable. Since I have already determined that the discretionary function exception precludes the plaintiff from claiming that the United States was negligent in allowing the dangerous condition to exist, or in failing to supervise BMA or warn her of the dangerous condition that BMA had created, the plaintiff cannot succeed under this theory either. Further, I cannot characterize the stacks of panels and work being done at the Bowling Center as "inherently or intrinsically dangerous."

**(3) Open and Obvious Condition**

Finally, the United States contends that it is entitled to summary judgment on the plaintiff's failure to warn claim. The United States argues that it had no duty to warn the plaintiff about the existence of the stack of resurfacing material, because the stack was an open and obvious condition. Since I have already determined that subject matter jurisdiction is lacking due to the application of the discretionary function exception to the FTCA, I need not consider whether the stack of resurfacing material that the plaintiff tripped over was so open and obvious that the United States had no duty to warn her of its existence.

### III.  *CONCLUSION*

For the reasons set forth above, the United States of America's motion to dismiss is GRANTED. (doc. 15) The plaintiff's claims against the United States are DISMISSED for lack of jurisdiction. The plaintiff and defendant BMA shall advise me in writing within 14 days regarding their position on whether this Court should exercise supplemental jurisdiction over the remaining claims.